O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST RAYMOND RODRIGUEZ, | CASE NO. SACV 10-00271 DOC (ANx) |
| Plaintiff(s), | **O R D E R** DENYING **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF LONG BEACH, ET AL, | |
| Defendant(s). | |

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants City of Long Beach, Long Beach Police Department[1], and Jonathan A. Steinhauser ("Defendants") in the above-captioned case (dkt. 21). The Court has considered the moving, opposing, and replying papers, as well as oral arguments, and DENIES the Motion in full.

---

[1] Despite both parties' insistence at oral arguments that police departments can be sued under 28 U.S.C. § 1983, police departments are generally not considered persons for purposes of § 1983. *See United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005). As a result, Plaintiff cannot properly bring his § 1983 claims against the Police Department. The Police Department is therefore dismissed as a party to the § 1983 claims.

**I. Background**

The majority of the material facts in this case are heavily disputed[2] and many are simply absent from the evidence presented to the Court by both parties. The deposition transcripts provided are incomplete, and the declarations narrow in scope. The Court summarizes the facts below but addresses specific facts as well as gaps in the facts when relevant throughout this Order.

On the evening of either May 27, 2009 or May 28, 2009[3], Plaintiff Ernest Rodriguez ("Plaintiff" or "Rodriguez") went to BJ's Pizzeria in Huntington Beach with his former girlfriend, Bridgette Molina ("Molina"), to celebrate her college graduation and to watch a basketball game. Deposition of Plaintiff Ernest Rodriguez ("Rodriguez Dep."), 57-58. Over the approximately three hours they were there, Rodriguez consumed some appetizers and two beers. Molina and Rodriguez then traveled to two other bars, during which time Rodriguez consumed three more drinks and a mixed beverage. *Id.* at 65-70.

At the last bar, Molina began to tease Rodriguez about a woman who had talked to him briefly at the bar while she was in the restroom. *Id.* at 70-75. Rodriguez was "frustrated" with Molina's teasing because the couple's relationship had ended, and he "didn't want to make it seem as if [he] was interested in another female at that time." *Id.* at 75-77. On the way back to Molina's car, Rodriguez punched in a window at Sweet Jill's Bakery, shattering the glass. *Id.* at 79. After he crossed the street, four bouncers from Legend's bar approached him and told him

---

[2] Indeed, defense counsel conceded as much in oral arguments, admitting Defendants' awareness of the heavy factual disputes in this case.

[3] Defendants insist that the fact that the incident in question occurred "on the evening of May 28, 2009" is undisputed. *See* Defendants' Separate Statement of Undisputed Material Facts and supporting Evidence and Conclusions of Law ("Defendant's UMF"), ¶ 1. Defendants cite to a portion of the deposition of Mr. Rodriguez that merely identifies the time of the event but does not state the date on which the incident occurred. In Plaintiff's Opposition, he describes the event as having occurred on May 27, 2009. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Opp'n"), 1. Though this fact is not material, the dispute reflects the lack of clarity over the events that occurred that night.

1  they had called the police. *Id.* at 83-84. According to Rodriguez's testimony, he promptly
2  informed the bouncers that he would take full responsibility for the window and would cooperate
3  with them, but that they should not try to put their hands on him. *Id.* at 83. Rodriguez and the
4  bouncers then walked for a few minutes to the corner of Covina[4] and 2nd Street and waited one
5  to two minutes for the police to arrive. *Id.* at 94-96. During this time, Rodriguez insists that he
6  remained calm, though his hand was bleeding and he felt shocked by the events that had
7  occurred. *Id.* at 95. At oral arguments, Defendants suggested that evidence shows that
8  Rodriguez was not calm and was shouting obscenities, but did not point the Court to the
9  evidentiary basis for this assertion.[5]

10  Defendant Officer Jonathan Steinhauser ("Steinhauser") arrived at the scene a few
11  minutes later and parked his car approximately one-foot from the curb. *Id.* at 99. He intended
12  to arrest Rodriguez once he determined if he was the one who had broken the window, but he
13  was determined to handcuff Rodriguez prior to making that determination so that he could "take
14  control of him." Deposition of Jonathan A. Steinhauser ("Steinhauser Dep."), 31-32.
15  Steinhauser therefore asked Rodriguez to approach the police car, and Rodriguez complied
16  without incident. *Id.* at 28. Steinhauser then ordered Rodriguez, who outsized him by about
17  one-hundred pounds, to sit on the curb. Rodriguez Dep., 104; Declaration of Jonathan A.
18  Steinhauser ("Steinhauser Decl."), ¶ 3. Rodriguez refused, believing the police car was parked
19  too close to the curb to sit, though he admits that he probably could have sat down. Rodriguez
20  Dep., 108. Steinhauser repeated his order several times–the number is disputed–and Rodriguez
21  continued to refuse to sit. *Id.* at 112. At no time did Steinhauser believe that Rodriguez was
22  intoxicated. Steinhauser Dep., 96-98.

23  After the third order, Steinhauser informed Rodriguez that he would strike him with his

---

[4] Defendants' Motion and UMF references a street called "Corona Avenue." *See* Motion, 4. In Plaintiff's deposition, he described a street called "Covina." The Court finds no evidentiary support for Defendants' repeated references to "Corona Avenue."

[5] Indeed, in the deposition of Rodriguez, he was asked if he had been shouting obscenities and answered that he could not recall doing so.

1  baton if he refused to sit and that it would hurt. Steinhauser Decl., ¶ 4; Rodriguez Dep., 112-
2  113. The number of times he warned Rodriguez is disputed. *See* Plaintiff's Separate Statement
3  of Genuine Disputes in Opposition to Defendants' Motion ("SGD"), ¶ 12. Steinhauser advised
4  Rodriguez that he was under arrest, and that he must sit. During this time, Molina pleaded with
5  Rodriguez to sit down and to cooperate. Rodriguez Dep., 113-114. Defendants have suggested
6  through their deposition questions that other witnesses reported that Rodriguez used profanity
7  towards both Steinhauser and Molina at this time, though Rodriguez testified that he does not
8  recall doing so. *Id.* at 113-115.

9  When he refused to comply, Steinhauser put out a "Code-3" call for assistance and then
10 moved toward Rodriguez and began striking him with his baton. Steinhauser Decl, ¶ 4;
11 Rodriguez Dep., 116-17. Steinhauser struck Rodriguez on the side of his left leg, and continued
12 to strike him repeatedly, making contact. Rodriguez Dep., 117-20. During this time, Rodriguez
13 requested that Steinhauser "calm down." *Id.* at 121. Rodriguez testified that he blocked the
14 fourth baton strike, and briefly grabbed the baton for approximately one second. *Id.* at 122-23.
15 Steinhauser then pulled the baton back, and Rodriguez immediately let go of the baton without a
16 struggle. *Id.* at 125.

17 As the parties discussed at oral arguments, there is conflicting evidence regarding
18 whether Steinhauser regained control of the baton or whether Rodriguez tossed the baton away
19 from him. *Compare*, *id.* at 122-23 and Deposition of David Irizarry ("D. Irizarry Dep."), 20-23.
20 Thus, it is unclear whether Rodriguez ever held the baton in a threatening way against
21 Steinhauser. Rodriguez claims that after he let go of the baton, Steinhauser stumbled backwards
22 a few steps. Rodriguez Dep., 123-24. He then began to shoot Rodriguez several times and
23 Rodriguez immediately fell down into a gutter. D. Irizarry Dep., 23. At no point did
24 Steinhauser warn Rodriguez of his intent to shoot.

25 Though neither side submitted any evidence as to the extent of Rodriguez's injuries, at
26 oral arguments, both parties represented that Rodriguez was shot three times, and that the bullets
27 left nine separate bullet holes in his flesh.
28

4

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient. *See Anderson,* 477 U.S. at 248-49. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

## III. Discussion

Defendants raise four arguments in support of their Motion for Summary Judgment: (1) that Plaintiffs' claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) that Defendant Steinhauser is entitled to qualified immunity; (3) that Plaintiff's state law claims are derivative of his § 1983 claim and are therefore barred under *Heck* as well; and (4) that because there is no individual liability under *Heck*, there can be no municipal liability. Each of these arguments fails. The Court addresses each in turn.

### A. Application of *Heck v. Humphrey*

Under *Heck v. Humphrey*, a plaintiff cannot succeed in bringing a § 1983 claim where success on the claim would call into question an underlying conviction. *See* 512 U.S. Defendants argue that Plaintiff's § 1983 claim for excessive force would necessarily challenge the accuracy of his conviction for resisting or deterring an officer. Defendants, however, mistakenly stretch *Heck* beyond its limits.

In *Heck*, the petitioner had been convicted of voluntary manslaughter for the killing of his wife and served his sentence in state court. *Id.* at 478. While in prison, he brought a § 1983 action against county prosecutors and a state police investigator, alleging that they had violated his constitutional rights by, *inter alia*, destroying evidence in the underlying investigation leading to his conviction. *Id* at 479. In denying the petitioner's claim, the Court established that a claim for damages under § 1983 that challenges the lawfulness of a conviction or sentence is barred. *Id.* at 486-87. The Court also held, however, that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ." *Id.* at 487 (emphasis in original). In so doing, the Court acknowledges the narrow nature of its holding. *See id.* at 488.

It is undisputed that Plaintiff Rodriguez pled nolo contendere to a violation of California Penal Code § 69. The Code criminalizes the conduct of any person who acts "by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty . . . ." Cal. Pen. Code. § 69. Defendants argue that Plaintiff's § 1983 claim for excessive force would necessarily challenge the adequacy of Plaintiff's conviction under the statute because the statute requires an officer to have been engaged in the lawful performance of his duties. Motion, 8 (citing *People v. Wilkins*, 14 Cal. App. 4th 761, 776 (1993)). Because using excessive force is not "lawful," *see People v. Olguin*, 119 Cal. App. 3d 39, 45 (1981), Defendants contend that Plaintiff's claim for excessive force is barred because it would invalidate his underlying conviction for resisting or deterring an officer's performance of

6

1  his duties. In other words, Defendants believe that a finding that Steinhauser used excessive
2  force would necessarily mean he was not acting lawfully in performing his duties, and therefore
3  would challenge the validity of Plaintiff's conviction for resisting or deterring an officer in duty.
4        Defendants' reliance on *Heck* is misplaced. *See Campos v. City of Merced*, 709 F. Supp.
5  2d 944, 961 (E.D. Cal. 2010) ("Ordinarily, *Heck* would not bar a court from hearing a claim for
6  excessive force because such claims do not ordinarily impugn the underlying conviction."). To
7  be sure, Plaintiff pled nolo contendere to a violation of Code § 69. That plea, however, could
8  have been based on any one of several acts or omissions of Rodriguez in his interaction with
9  Steinhauser; the statute, by its very language, criminalizes both resisting and deterring or
10 preventing an officer from performing his duties. *See* Cal. Pen. Code § 69. Yet nothing in the
11 record or in the plea itself addresses what specific conduct of Rodriguez formed the basis of his
12 conviction under Penal Code § 69. *See* Tyler R. Dowdall Declaration ("Dowdall Decl."), Ex.
13 12.[6] Neither party has been able to establish whether he was convicted for deterring or for
14 resisting Steinhauser in the performance of his duties, nor have they shown what specific
15 conduct constituted the offense.
16       It is undoubtedly Defendants' burden to demonstrate that the underlying conviction
17 would be invalidated should Plaintiff succeed on his § 1983 claim; to do so they must point to
18 the exact conduct for which Plaintiff was convicted under Penal Code § 69. *See Sanford v.*
19 *Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001). Plaintiff insists that he understood the basis of his
20 nolo contendere plea to have been his refusal to comply with Steinhauser's order to sit on the
21 curb. *See* Rodriguez Decl. ¶ 2. Defendants undermine the significance of Plaintiff's
22 understanding, arguing that because Penal Code § 69 criminalizes resisting or deterring an
23 officer through threats or violence, the mere refusal to sit on the curb could not possibly have
24 constituted the basis for Plaintiff's conviction. Reply, 5. This argument is unavailing; there are
25 genuine issues of material fact as to Plaintiff's verbal expressions during the time he refused to

---

27
28      [6] The Court GRANTS Defendant's Request for Judicial Notice of the Docket from Plaintiff's Los Angeles Superior Court case.

7

1  sit on the curb. Accordingly, a reasonable jury may find that Plaintiff's refusal to sit was
2  threatening when placed in context and coupled with some of the profanity Defendants suggest
3  he used.  Therefore, Plaintiff's refusal to sit could have constituted the basis of his conviction
4  under Penal Code § 69.
5        Plaintiff's Opposition also suggests another possibility–indeed, the very possibility
6  Defendants put forth in an effort to support their Motion--that Plaintiff misunderstood the
7  significance of his plea, and that the conviction was actually based upon his resisting of
8  Steinhauser's baton blows. *See* Opp'n, 7; Reply, 5.  Even if the relevant conduct was, in fact,
9  Rodriguez's grabbing of the baton, Steinhauser's use of his gun still occurred subsequent to the
10 baton usage.  Like at the time of his refusal to sit, there have been suggestions that Plaintiff was
11 shouting profanities that may have qualified as "threatening" and thereby constituted the basis
12 for his conviction under Penal Code 69.  So long as the conduct leading to the conviction
13 occurred prior to the excessive force, Plaintiff's § 1983 claim does not challenge the validity of
14 his conviction.  In other words, it is possible that Plaintiff's conviction was based on Plaintiff's
15 blocking of the baton strike–during which Steinhauser may have been acting lawfully.  Yet the
16 evidence indicates that Steinhauser's decision to shoot Plaintiff came after Plaintiff had lost
17 control of the baton; thus Steinhauser's excessive force was subsequent to Plaintiff's violation
18 under Penal Code § 69.
19       Viewing the situation abstractly reveals the incongruity of Defendant's argument.  It is
20 certainly not difficult to imagine a scenario in which a person resists arrest and an officer
21 responds using lawful force, but subsequently crosses the line into excessive force.  Defendants
22 have not met their burden of distinguishing the facts at issue in this case from such a
23 hypothetical scenario. For the underlying conviction to remain valid, Steinhauser need only
24 have been "acting lawfully in the performance of his duties 'at the time the offense against him
25 was committed'"– the moment at which Plaintiff committed the conduct leading to his
26 conviction under Penal Code § 69. *Sanford*, 258 F.3d at 1120.  But once Steinhauser used
27 excessive force *subsequent* to the time Plaintiff either resisted or deterred him with force or
28 threats, Plaintiff has a cognizable claim under § 1983. *See id.*; *see also Smith*, 394 F.3d at 698

("Under *Heck*, [Plaintiff] would be allowed to bring a § 1983 action, however, if the use of excessive force occurred subsequent to the conduct on which his conviction was based.").

Thus, the lack of clarity over the conduct on which the conviction was based precludes a bar under *Heck*. Indeed, in similar cases, courts have refused to find § 1983 claims barred by *Heck* when it is unclear on what conduct a conviction was based, and therefore whether a § 1983 claim would invalidate that conviction. *See, e.g.*, *Smith v. City of Hemet*, 394 F.3d 689, 697-98 (9th Cir. 2005) (holding that because "[a]t the very least . . . the record does not reflect which acts underlay [plaintiff's] plea . . . his § 1983 action is not necessarily inconsistent with his conviction" and therefore "*Heck v. Humphrey* is not a bar.")[7]; *Sanford*, 258 F.3d at 1119. Likewise, this Court finds that the ambiguity as to the factual basis for Plaintiff's conviction precludes a *Heck* bar. It is quite plausible that Plaintiff's § 1983 claim for excessive force arose subsequent to his resisting or deterrence of Steinhauser's lawful duties.

Defendants refute this analysis by arguing that there is no separation between the different acts of Plaintiff and the the entire encounter was one, united event, rather than separate, discrete events. There are genuine issues of material fact as to whether the facts at issue occurred as part of one unified event or whether they constituted several, separate incidents. Though Plaintiff, as described above, describes the facts as discrete incidents, Steinhauser testified that he arrived at the scene with the intent to arrest Rodriguez. *See* Steinhauser Dep. Thus, he could lawfully use some force; Plaintiff does not appear to dispute this. Assuming that the encounter was one concise event during that warranted Steinhauser's use of force, *Heck* still would not bar Plaintiff's claim if the type of force used in response to that event was unreasonable. In *Yount v. City of Sacramento*, the California Supreme Court applied *Heck* and found that although the plaintiff's § 1983 claims were barred to the extent that they relied upon a

---

[7] Defendants' efforts to distinguish *Smith* by arguing that it involved several discrete acts, any one of which could have been the basis of the underlying conviction is unavailing. It is similarly unclear in this case what exact conduct was the basis of Plaintiff's plea. In fact, the Court finds, based on its review of the evidence, that the most plausible interpretation is exactly the one put forward by Plaintiff: that he pled as a result of his refusal to sit on the curb as instructed by Steinhauser. *See* Rodriguez Decl., ¶ 3.

1  theory that the arresting officer could not use force at all, *Heck* did not bar § 1983 claims to the
2  extent that they challenged the officer's use of deadly force. 43 Cal. 4th 885, 887 (2008). In
3  other words, though the officer may have been lawfully entitled to use force, his use of *deadly*
4  force was unreasonable. Accordingly, success on a § 1983 claim for excessive force based on
5  the use of that deadly force would not invalidate a conviction for resisting arrest. *See id.*

6  Defendants in this case attempt to undermine *Yount* by arguing that it is merely a state
7  court decision that has not been adopted by the Ninth Circuit. *See* Defendants' Reply, 3. As a
8  threshold matter, this Court is "of course, bound by the California Supreme Court's
9  interpretation of California law." *Hooper v. County of San Diego*, 629 F.3d 1127, 1132 (9th Cir.
10 2011) (interpreting the *Yount* decision). Moreover, the Ninth Circuit, as recently as this year,
11 has followed the California Supreme Court's findings in *Yount*. *Id.*

12 Though there is a lack of clarity over the facts in this case, the Court must make factual
13 inferences in the light most favorable to Plaintiff. *See Diebold, Inc.*, 369 U.S. at 655. Plaintiff
14 asserts that his conviction stemmed only from his refusal to sit on the curb pursuant to
15 Steinhauser's orders–which occurred prior to Steinhauser's use of the baton and, ultimately, of
16 his gun. Rodriguez Decl. ¶ 3. Even if, as the Court discussed above, the conviction stemmed
17 from his resisting of the baton strike, it is undisputed that Plaintiff no longer had the baton in his
18 hands at the time that Steinhauser shot him. Rodriguez Dep., 123-24; *see also* Defendants'
19 SUM, ¶ 35 (not disputing Plaintiff's claim that the baton was dropped at the time of the
20 shooting). There is also no evidence that Plaintiff adopted any fighting stance with Steinhauser;
21 multiple witnesses reported that Plaintiff never hit, attacked, or advanced against Steinhauser.
22 *See, e.g.*, D. Irizarry Dep., 22-26. This suggests that Steinhauser's use of deadly force may have
23 been excessive, even if his use of a lesser force was appropriate.

24 Indeed, the Court in *Sanford*, in finding a plaintiff's claim was not barred as a result of
25 her underlying conviction, specifically emphasized that if the officer had shot and wounded the
26 plaintiff instead of just punching her, "there would be no doubt that she could sue him for
27 violation of her civil rights." *Id.* That is precisely what is alleged to have happened here.
28 Plaintiff insists that the conduct leading to his conviction arose prior to the use of deadly

10

1 force that prompted his § 1983 excessive force claim. Accordingly, because it is not clear that
2 Plaintiff's success on his § 1983 claim would imply that his conviction under Penal Code § 69 is
3 invalid, his claim is not barred by *Heck*. *See Smith*, 394 F.3d at 696. Summary judgment as to
4 Plaintiff's § 1983 claim is therefore DENIED.

        **B.**       **Qualified Immunity**

6 Defendants contend that Steinhauser is entitled to qualified immunity and therefore is
7 immune from suit. A police officer is entitled to qualified immunity from suit under 42 U.S.C. §
8 1983 where an objectively reasonable officer would not have known that his conduct was
9 unconstitutional under the circumstances. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Qualified
10 immunity shields an officer from suit when she makes a decision that, even if constitutionally
11 deficient, reasonably misapprehends the law governing the circumstances she confronted."
12 *Brosseau v. Hagan*, 543 U.S. 194, 198 (2004).

13 The Supreme Court has set forth a two-part analysis for considering the issue of qualified
14 immunity. A district court must ask, "[t]aken in the light most favorable to the party asserting
15 the injury, do the facts alleged show the officer's conduct violated a constitutional right?"
16 *Saucier*, 533 U.S. at 201. The court must also determine "whether the right was clearly
17 established." *Id*. A right is "clearly established" if, "in light of the specific context of the case,"
18 it would be "clear to a reasonable officer that his conduct was unlawful in the situation he
19 confronted." *Id*. at 201-02. "If the law did not put the officer on notice that his conduct would
20 be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*. at 202.
21 To be sure, the right alleged to have been violated must be clearly established in a somewhat
22 "particularized" way to the facts and circumstances Steinhauser confronted. *Anderson v.*
23 *Creighton*, 483 U.S. 635, 640 (1987). Yet it is not true that qualified immunity is presumed
24 "unless the very action is question has previously been held unlawful"–rather, qualified
25 immunity will be found if "in the light of pre-existing law the unlawfulness [is] apparent." *Id.*

26 Courts are free to analyze the two prongs in either order. *See Pearson v. Callahan*, 555
27 U.S. 223 (2009) ("The judges of the district courts and the courts of appeals should be permitted to
28 exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis

11

should be addressed first in light of the circumstances in the particular case at hand." ). The Court in *Pearson* held that the *Saucier* approach, under which a court must first ask if there was a constitutional right violated before turning to whether that right was clearly established, is not mandatory, though it is "often appropriate" and "beneficial." *Id.* at 236.

Plaintiff's Complaint appears to allege several different constitutional violations, including, *inter alia*, excessive force under the Fourth Amendment, *see* Complaint, ¶ 39, and "violation of his constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person and summary, cruel and unusual punishment," *id.* at ¶ 77. Defendants' assertion of qualified immunity only addresses the excessive force claim. The Court therefore need only look to whether Steinhauser violated Plaintiff's constitutional rights through use of excessive force, though the conduct giving rise to other constitutional claims asserted by Plaintiff is presumed to be the same as that giving rise to the excessive force claim.

An excessive force claim is adjudicated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). In evaluating whether officers used excessive force, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* at 396 (internal quotation marks omitted). Among the specific facts a court must consider are "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Critically, "force must be necessary to be reasonable." *Brooks v. City of Seattle*, 599 F.3d 1018, 1025 (9th Cir. 2010). This is especially true when the nature of the force used is deadly. "The intrusiveness of a seizure by means of deadly force is unmatched." *Garner*, 471 U.S. at 9. For that reason, when a suspect does not threaten the officer or others, "the harm resulting from failing to apprehend him does not justify the use of deadly force . . . ." *Id.* at 11. Instead, the use of deadly force is justified only where a reasonable officer would have had probable cause to believe that there was a threat of serious injury to himself or others. *See Smith*, 394 F.3d at 704.

1    Given the large and material gaps in the evidentiary record, which the Court has
2 referenced repeatedly throughout this Order, the Court cannot determine what facts to consider
3 in conducting the qualified immunity analysis.  Plaintiff's and Steinhauser's declarations are
4 merely about one-page each, and omit many of the critical facts involving the encounter with the
5 baton, as well as the shooting itself.  As a result, the Court cannot undergo either step of the
6 *Pearson-Saucier* analysis, as it is unclear what facts it should even apply.   For example, there
7 are significant gaps in the facts and unclear evidence as to when and whether Plaintiff blocked
8 the fourth baton strike, threw the baton, grabbed the baton, or touched it in a way that suggested
9 he might use force against Steinhauser.  These details, are, of course, critical, since courts have
10 at times found deadly force justifiable when a suspect threatens an officer with a dangerous
11 weapon. *Smith*, 394 F.3d at 704 (citing cases).  In this case, witness testimony suggests, at the
12 very least, that Plaintiff's contact with the baton was not overtly threatening to Steinhauser[8], as
13 many witnesses recounted that Plaintiff did not swing the baton towards Steinhauser. *See, e.g.*,
14 D. Irizarry Dep.  Nonetheless, there are inconsistent accounts of what exactly Rodriguez  did
15 with the baton in those brief moments during which he had control of it.[9]  As a result, the Court
16 cannot at this stage, determine whether a constitutional violation occurred.  More importantly,
17 the Court cannot evaluate whether any such constitutional right was clearly established; it cannot
18 apply "particularized" case-law when it is unclear what facts are to be considered. *See*
19 *Anderson*, 483 U.S. at 640.
20    The many gaps in the facts, as well as the need for credibility determinations to be made
21 in construing the facts, make evaluating the reasonableness of Steinhauser's conduct impossible
22 at this pre-trial stage. *See Act Up!Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) ("If a

---

[8] Indeed, defense counsel represented at oral arguments that it did not dispute the fact that Steinhauser was not confronted with a *deadly* threat.

[9] As counsel noted in oral arguments, it almost appears as if each witness has a completely different account of what happened.  Nonetheless, Steinhauser admitted in his deposition that Plaintiff did not swing the baton at anyone.  Unfortunately, neither party has submitted the next pages of the deposition so the Court cannot determine precisely what even Steinhauser alleges to have happened. *See* Steinhauser Dep., 46.

genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial."); *see also Menjivar v. City of Los Angeles*, 2007 WL 4662062, at *7 (C.D. Cal. 2007). Qualified immunity for Steinhauser is therefore DENIED.

### C. State Law Claims

Defendants argue that because *Heck* bars Plaintiff's § 1983 claim for excessive force, his state law claims of battery and negligence based on the same conduct are precluded as well.[10] Relying on the same logic put forward as to the purported *Heck* bar, they contend that because Steinhauser was acting lawfully during the arrest, his force must have been reasonable, and therefore cannot serve as the basis for negligence or battery state law claims, which rely upon the same "reasonableness" standard as federal civil rights claims for excessive force. *See* Motion, 11 (citing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 n.6 (2004)). Because the Court has not found *Heck* to bar Plaintiff's claim, and has not found that Steinhauser's conduct was reasonable, Plaintiff's state law claims survive as well.

Summary judgment as to Plaintiff's state law claims is therefore DENIED.

### D. Municipal Liability

Plaintiff's claims against the City of Long Beach rest on the principle of municipal liability under *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978). To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that a Constitutional right was violated and that the alleged violation was committed by a person acting under color of state law. *America Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006); *Gritchen v. Collier*, 254 F.3d 807 (9th Cir. 2001). *Monell* allows municipalities and local government entities to qualify as "persons" for § 1983 purposes. *Monell*, 436 U.S. In order to impose liability on a local government entity under *Monell*, a plaintiff must prove that the

---

[10] Plaintiff's Complaint actually asserts causes of action for assault; battery; negligence; and negligent hiring, training, and retention. *See* Complaint. Though Defendants only address the battery and negligence claims, and only appear to move for summary judgment as to those claims, the Court's reasoning in this section applies to the assault and negligent hiring, training and retention claims as well.

14

execution of a policy, custom, or practice by the municipality resulted in the deprivation of their constitutional rights. *Monell*, 436 U.S. at 690-91.

Defendants argue that because Steinhauser is not individually liable, there can be no liability for the city, even if it authorized the use of excessive force. Motion, 13. In other words, Defendants rest their entire argument for summary judgment as to municipal liability on the assumption that the Court will have found no individual liability. As the Court has described above, it has not done so. Accordingly, summary judgment as to *Monell* liability is DENIED.

**IV. Disposition**

For the reasons stated above, Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

DATED: August 25, 2011

_David O. Carter_
DAVID O. CARTER
United States District Judge